UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUELL FAMILY TRUST, TODD ALAN DUELL, Todd Alan Duell, living man, Trustee, Secured Party, Creditor, Holder In Due Course, Real Party In Interest,<br><br>                                            Plaintiff,<br><br>v.<br><br>GOSCH FORD, individual; MATT GOSCH, Owner, individual; FORD MOTOR CREDIT COMPANY, individual; MARION HARRIS, CEO, individual; and DOES 1-10, inclusive,<br><br>                                            Defendants. | Case No.: 24-CV-316 JLS (VET)<br><br>**ORDER (1) GRANTING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*; AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)**<br><br>(ECF Nos. 1, 6) |

Presently before the Court is Plaintiff Todd Alan Duell's Complaint ("Compl.," ECF No. 1)[1] and Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Appl.," ECF No. 6). Plaintiff also submitted a Declaration ("Decl.," ECF No. 6-1) in support of the IFP Application. Having carefully considered Plaintiff's Complaint,

---

[1] All page citations to the Complaint and its Exhibits ("Compl. Exs.," ECF No. 1-2) refer to the blue page numbers affixed to the top-left corner of each page in CM/ECF.

1

Plaintiff's submissions, and the applicable law, the Court **GRANTS** Plaintiff's IFP Application and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2).

## *IN FORMA PAUPERIS* APPLICATION

All parties instituting a civil action, suit, or proceeding in a district court of the United States, other than a petition for writ of habeas corpus, must pay a filing fee of $405. *See Fees of the U.S. District Court*, United States District Court: Southern District of California, https://www.casd.uscourts.gov/_assets/pdf/courtinfo/Fees%20of%20the%20U.S.%20District%20Court%20(CASD).pdf (last visited Mar. 22, 2024). An action may proceed despite a party's failure to pay the filing fee only if the party is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a)(1), which reads as follows:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

As § 1915(a)(1) does not itself define what constitutes insufficient assets to warrant IFP status, the determination of indigency falls within the district court's discretion. *See Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency."), *rev'd on other grounds*, 506 U.S. 194 (1993).

"An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). "One need not be absolutely destitute to obtain benefits of the [IFP] statute." *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960).

"Nonetheless, a plaintiff seeking IFP status must allege poverty 'with some particularity, definiteness and certainty.'" *Escobedo*, 787 F.3d at 1234 (quoting *United States v. McQuade,* 647 F.2d 938, 940 (9th Cir.1981)).

The Court denied Plaintiff's initial application to proceed IFP because (1) inconsistencies between Plaintiff's initial application and his Complaint called Plaintiff's eligibility into question, and (2) Plaintiff failed to report any expenses. *See* ECF No. 3 at 3–4. These omissions were concerning because, while Plaintiff reported no financial accounts on his initial application, his Complaint indicates that he has a "TDA bank account" from which he could "deposit . . . a new security instrument" to "acquire a new vehicle." Compl ¶ 24. Moreover, Exhibit A of Plaintiff's Complaint contains "CUSIP Results" indicating that "TODD DUELL" has net assets totaling $469,337,000 as of August 10, 2023, in an "Applied Finance Select Fund." *Id.* Ex. A at 2.

In his new IFP Application and associated Declaration, Plaintiff clarifies why he reported no expenses. Plaintiff explains that he spent more than a year paralyzed and in the hospital between 2021 and 2022. Decl. ¶ 1. When he left the hospital, he discovered that a woman named Wendy Michelle Baxter ("Baxter") had embezzled all his "private property, bank accounts, and trust real property," leaving him with nothing. *See id.* ¶¶ 3–4. Plaintiff has been unable to work while he recovers; his only income is the $290 per month in public assistance he receives. *See id.* ¶¶ 4–5. To survive, Plaintiff lives with his friend, who pays Plaintiff's expenses in excess of $290. *Id.* ¶¶ 5–6.

Plaintiff does not provide additional clarity regarding his TDA account beyond explaining that it is a "Treasury Direct Account" with "unlimited credit" that is not a "traditional 'bank account' with Federal Reserve Notes, a check book, debit card, etc." *Id.* ¶ 9. He makes no mention of the Applied Finance Select Fund. *Id.* Instead, he provides incomprehensible instructions, including that the Court "perform a 'pull' and report the case trust accounting to [him] so [he] can report the transaction as required to the IRS." *Id.*

Despite this continued lack of clarity, the Court will **GRANT** Plaintiff's IFP Application. Even if Plaintiff has the funds described in his Complaint, it is clear from

Plaintiff's description of his living circumstances that he cannot access said funds. *See generally* Decl. As Plaintiff is dependent on his friend for shelter, food, and necessary expenses, the Court concludes that Plaintiff cannot pay the filing fee and still afford the necessities of life. *See Escobedo*, 787 F.3d at 1234.

**SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)**

**I.   Standard of Review**

Because Plaintiff seeks to proceed IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners proceeding IFP). Under this statute, a court must *sua sponte* dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from immune defendants. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc).

Section 1915(e)(2)'s "frivolous" bar "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint is legally frivolous where "[none] of the legal points [are] arguable on their merits." *Id.* at 325 (alterations in original) (quoting *Anders v. California*, 386 U.S. 738, 744 (1967)). A complaint is factually frivolous when it is "clearly baseless" and includes allegations that are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (internal quotation marks omitted) (quoting *Neitzke*, 490 U.S. at 325, 327–28).

A non-frivolous complaint may nonetheless fail to state a claim "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Thus, to avoid dismissal for failure to state a claim, a plaintiff's complaint must provide "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Put differently, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint that suggests the "mere possibility of misconduct" or provides "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" does not satisfy *Iqbal*'s plausibility standard. *Id.* at 678–79.

When determining whether a complaint states a claim, courts have a duty to construe a pro se litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Moreover, a district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect." *Lopez*, 203 F.3d at 1130 (internal quotation marks omitted) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)).

Lastly, "[t]he Court has an independent obligation to determine whether it has subject-matter jurisdiction." *Cox v. Lee*, No. CV-20-0275-PHX-DMF, 2020 WL 1904625, at *2 (D. Ariz. Apr. 17, 2020) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). As part of its review under 28 U.S.C. § 1915(e)(2), therefore, a court must determine whether it may exercise subject matter jurisdiction over the plaintiff's claims.

## II. Plaintiff's Allegations

Plaintiff's allegations center around an allegedly fraudulent motor vehicle transaction and associated debt. Per Plaintiff, Baxter—who is not named as a Defendant—

used Plaintiff's checking account, his cash, and his Jeep Wrangler to acquire a 2019 F-150 truck from Defendant Gosch Ford. Compl. ¶ 1. Because said assets did not cover the cost of the truck, Baxter—using Plaintiff's credit—also took out a loan from Defendant Ford Motor Credit Company ("FMCC"). *Id.*

Plaintiff raises a series of confusing contentions in an apparent attempt to avoid liability for this loan. Plaintiff first asserts that Defendants have received payment in full from a Treasury Direct account purportedly maintained on Plaintiff's behalf by the United States Treasury. *See id.* at 2–5, 7, 11. Plaintiff also contends that Defendants knowingly accepted a forged check, *id.* at 9; accepted stolen goods, *id.* at 10; failed to provide him consideration, *id.*; conspired with Baxter, *id.* at 12; failed to satisfy their fiduciary duties to him, *id.* at 13; issued an unconscionable loan, *id.* at 13–14; and knowingly relied on an invalid power of attorney, *id.* at 15. Additionally, Plaintiff accuses Defendants of violating a series of disclosure requirements and federal statutes, *see id.* at 16–18; and defaulting in this lawsuit by failing to engage in Plaintiff's "administrative process," *see id.* at 28–31.

Finally, Plaintiff asserts that he has deposited a General Services Administration ("GSA") bond with the Court. *Id.* at 19. Because this Court is "also a bank," per Plaintiff, this Court can cash said bond, compensate Defendants, and pay Plaintiff the remaining balance. *See id.* at 19–33.

## III. Analysis

### A. *Subject-Matter Jurisdiction*

#### 1. *Legal Standard*

"Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'" *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)). The party asserting jurisdiction—here, Plaintiff—bears the burden of establishing that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "This burden, at

the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action." *Wilkerson v. Butler*, 229 F.R.D. 166, 169 (E.D. Cal. 2005).

### 2. Diversity Jurisdiction

#### a. Section 1332

Diversity jurisdiction under 28 U.S.C. § 1332 requires "that the parties be in complete diversity," *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003), meaning "all plaintiffs must have citizenship different than all defendants," *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1057 (C.D. Cal. 2012). "[A] natural person's state citizenship is . . . determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). That said, "numerous courts treat a person's residence as prima facie evidence of the person's domicile." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013).

Plaintiff's Complaint does not contain allegations sufficient to meet his burden of demonstrating complete diversity. Defendant Gosch Ford is a "corporation registered in the State of California." Compl. at 5. Based on the address listed on his Civil Cover Sheet, Plaintiff is also a resident of California. *See* ECF No. 1-1; *see also* ECF No. 4 (informing the Court of Plaintiff's new address, also in California). Though residence alone is not dispositive, *see Kanter*, 265 F.3d at 857, Plaintiff has alleged no facts suggesting that his domicile differs from his place of residence. *See generally* Compl. Thus, the requirement of complete diversity is not satisfied. *See Bey v. Geiser*, No. EDCV19844JGBKKX, 2019 WL 12447340, at *1 (C.D. Cal. May 21, 2019) ("Because Plaintiff and all Defendants appear to be California citizens, the Court finds that the Complaint fails to allege diversity jurisdiction.").

Plaintiff contends that diversity jurisdiction is available because "TODD ALAN DUELL and the DUELL FAMILY TRUST operate as Foreign Estates and Trusts." Compl.

at 7. Plaintiff therefore appears to suggest that he is a trust, rather than a natural person. Unfortunately for Plaintiff, courts have repeatedly rejected such theories. *See McKenna v. HP Inc.*, No. CV-22-08016-PCT-SPL, 2022 WL 357344, at *1–2 (D. Ariz. Feb. 7, 2022) (noting the plaintiff's theory that she was "a trust entity representing a corporate fiction sharing her name," concluding the plaintiff must be a natural person with a domicile, and rejecting diversity jurisdiction based on the plaintiff's Arizona address); *Bey*, 2019 WL 12447340, at *1 (C.D. Cal. May 21, 2019). Thus, the Court rejects Plaintiff's purported trust status, concludes that Plaintiff is domiciled in California, and thus finds diversity jurisdiction lacking under 28 U.S.C. § 1332.

b.   Section 1335

Plaintiff's Complaint also references the federal interpleader statute: 28 U.S.C. § 1335. This statute "grants district courts original jurisdiction over actions of interpleader or in the nature of interpleader where a plaintiff stakeholder has in its possession money or property worth $500 or more that is or may be the subject of adverse claims by two or more claimants of diverse citizenship."[2] *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 359 (S.D.N.Y. 2008). "An inchoate, uncertain claim for attorney's fees or [cause] in action asserted against the general assets of a party rather than specific, identifiable 'property' is not a proper subject for interpleader relief." *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976).

Plaintiff has failed to establish subject matter jurisdiction under 28 U.S.C. § 1335. Plaintiff has not established that Defendants are asserting claims against *specific property or funds* in *his* possession; instead, the Complaint expressly alleges that he does not possess the at-issue Ford truck. Compl. ¶ 17. Nor has Plaintiff sufficiently alleged that Defendants' claims are adverse—*e.g.*, that plaintiff cannot "justifiably be found liable to both . . . [D]efendants." *See Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995).

---

[2] Complete diversity is not required in interpleader suits. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31 (1967).

1  Indeed, Plaintiff's Complaint makes no effort to explain why Defendant Gosch Ford
2  constitutes an adverse claimant to Defendant Ford Motor Credit Company. Thus, this
3  Court lacks jurisdiction under 28 U.S.C. § 1335.[3]

     3. *Admiralty Jurisdiction*

  Plaintiff next seeks to invoke admiralty jurisdiction. *See* Compl. at 26. However, admiralty jurisdiction is unavailable where a claim "has no relation to maritime activities." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir. 2013). Here, Plaintiff's Complaint alleges wrongdoing related to the purchase of an automobile. *See* Compl. at 8–14. As this alleged wrongdoing implicates no maritime activities, admiralty jurisdiction is unavailable.

     4. *Federal Question Jurisdiction*

  "A plaintiff properly invokes [federal question] jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (quoting 28 U.S.C. § 1331). A claim does not qualify as "colorable" if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

  The Court will first address the Complaint's reliance on federal criminal statutes. Next, the Court will turn to the Complaint's references to federal regulations and statutes associated with a purported Treasury Direct account and GSA bond. Finally, the Court will address the Complaint's citations to the Sherman Act, Miller Act, and Fair Debt Collection Practices Act ("FDCPA").

/ / /

/ / /

---

[3] Moreover, for this court to retain jurisdiction under 28 U.S.C. § 1335, Plaintiff must "deposit[] such money or property . . . into the registry of the court" or "give bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." 28 U.S.C. § 1335; *see also Viscuso*, 569 F. Supp. 2d at 360. Given Plaintiff's IFP application, the Court doubts that Plaintiff can satisfy this requirement.

a.     Federal Criminal Statutes

Plaintiff repeatedly accuses Defendants of violating federal criminal statutes. *See*, *e.g.*, Compl. at 17 (asserting violations of 18 U.S.C. § 1001, 18 U.S.C. § 472, and 18 U.S.C. § 475). However, because private parties may not enforce criminal statutes through a civil action, criminal statutes do not provide a basis for the exercise of federal question jurisdiction over a civil case. *See Benson v. Hemet Gatekeepers Sec. Guards*, No. 520CV02593JWHSPX, 2020 WL 8630496, at *1 (C.D. Cal. Dec. 21, 2020); *Aphrodite v. Rego*, No. 22-CV-1597 JLS (DEB), 2022 WL 17097434, at *3 (S.D. Cal. Nov. 21, 2022).

b.     Treasury Direct Account/GSA Bond

Plaintiff also cites a bewildering series of federal regulations and statutes to support his apparent contention that he is entitled to funds from the United States Treasury. These regulations include, but are not limited to: 31 C.F.R. §§ 363.6, 363.10 (defining terms associated with Treasury Direct accounts, which allow individuals and entities to purchase Treasury securities, *see* 31 C.F.R. § 363.10); 50 U.S.C. § 4312 (outlining procedures through which the United States may interact with an alien property custodian); 28 U.S.C. § 581 (requiring the United States Attorney General to appoint trustees associated with judicial districts); *id.* § 3002(4) (defining "Debtor" for purposes of federal debt collection); 26 U.S.C. § 7701(a)(31)(B) (defining "Foreign estate or trust" under the Internal Revenue Code); 31 U.S.C. § 5312(a)(2)(C) (defining "financial institution" as, among other entities, a "private banker"); 26 U.S.C. § 266 (barring tax deductions for certain amounts); and 31 U.S.C. § 5118(d) (eliminating "gold clauses"—*i.e.*, rights to require payment in gold or specific currency—by noting that said clauses may be satisfied by any form of legal tender).[4] *See generally* Compl.

---

[4] The Court is not convinced that any of the regulations and/or statutes on which Plaintiff's theory relies create a private right of action from which a federal civil action can arise. However, as the Court determines *infra* that it lacks subject matter jurisdiction because Plaintiff's theory of recovery under the said laws is frivolous, the Court need not resolve this issue here.

Relying on these statutes and regulations, Plaintiff alleges that by performing "revesting of title," he has laid claim to securities in a Treasury Direct account formerly held in trust for him by the United States Attorney General. *See id.* at 2–5. Per Plaintiff, he attempted to use this account to satisfy his debt with Defendants, but Defendants have not recognized the account's existence. *See id.* ¶¶ 7, 24.

Plaintiff also alleges that he has deposited "a GSA bond" in this Court that purportedly allows the Court to access his Treasury Direct account. *See id.* at 19. Plaintiff therefore requests that the Court "petition the CRIS Custodian to release 100% of the funds to the positive benefit of the Plaintiff for setoff and settlement." *Id.* at 33. The purported "bond" is attached to the Complaint as Exhibit B. It consists of a series of forms wherein "TODD ALAN DUELL TRUST" is listed as both principal and surety of a "Bid Bond," "Performance Bond," and "Payment Bond." *See generally* Compl. Ex. B.

Courts have repeatedly rejected theories like the above as frivolous. In *El v. AmeriCredit Financial Services, Inc.*, the plaintiff sought to pay a motor vehicle debt by ordering his creditor to collect from the United States Treasury. *See* 710 F.3d at 750. His creditor repossessed the vehicle, and the plaintiff sued the creditor in federal court. *Id.* On appeal, the Seventh Circuit recognized that it lacked jurisdiction over the plaintiff's "frivolous" lawsuit. *Id.* at 750–53. The panel specifically rejected the theory that persons may charge their debt to the Treasury Department. *Id.* at 750.[5]

Similarly, bankruptcy courts have rejected plaintiffs' attempts to satisfy debts or make payments using purported "bonds." *See In re Hayes*, No. ADV 11-80731-JW, 2011 WL 4566378, at *3 & n.1 (Bankr. D.S.C. Sept. 22, 2011); *In re Harrison*, 390 B.R. 590, 592–93, 595 (Bankr. N.D. Ohio 2008). Indeed, "[f]rom coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of

---

[5] This theory has been referred to as "redemption theory," which "teaches that individuals can utilize the Uniform Commercial Code to create fictitious 'Treasury Direct Accounts' in the United States Treasury Department." *United States v. Getzschman*, 81 F. App'x 619, 620 (8th Cir. 2003). Theorists "create money orders and sight drafts drawn on their Treasury Direct Accounts to pay for goods and services." *Id.*

exchange' have been dismissed as frivolous." *Hennis v. Trustmark Bank*, No. 2:10-CV-20, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010); *see also McClain v. I-10 Mac Haik CDJR Ltd.*, No. 4:21-CV-3240, 2023 WL 361554, at *4 (S.D. Tex. Jan. 23, 2023); *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 761 (W.D. Va. 2007), *aff'd*, 282 F. App'x 260 (4th Cir. 2008).

Thus, even if Plaintiff's apparent claim to United States assets arises under federal law, it is "wholly insubstantial and frivolous" and therefore does not give rise to federal question jurisdiction. *See Bell v. Hood*, 327 U.S. at 682–83; *El*, 710 F.3d at 750–54.

### c. Remaining Federal Causes of Action

#### i. Sherman Act

Plaintiff alleges that when Defendants refused payment from his Treasury Direct account, they violated 15 U.S.C. §§ 1, 2 (the "Sherman Act"). *See* Compl. at 17. He clarifies that Defendants' violation involved "extract[ing] estate Legacy account funds from the U.S. Treasury Department and not return[ing] them with the 1099 OID as required by IRS Publication 1212, 938, and 550." *Id.* at 35.

Section 1 of the Sherman Act outlaws "every contract, combination . . . , or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. To bring a cognizable Section 1 claim, a plaintiff must plead facts demonstrating: "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Meanwhile, Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. "To state a claim for monopolization under Section 2 . . . , a plaintiff must [allege]: (1) [p]ossession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury."

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal quotation marks omitted) (quoting *Pac. Express, Inc. v. United Airlines, Inc.,* 959 F.2d 814, 817 (9th Cir. 1992)).

Plaintiff's largely incomprehensible pleading addresses none of the elements required to establish claims under either of the above provisions. Instead, Plaintiff appears to rely on his frivolous theory that he is entitled to Treasury Department funds. *See Compl.* ¶ 28. So, to the extent Plaintiff seeks to bring a § 1 claim, said claim is frivolous, wholly insubstantial, and cannot serve as a basis for federal question jurisdiction. *Cf. Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1200 (N.D. Cal. 2020) (exercising jurisdiction over a § 1 claim only after determining the plaintiff presented a cognizable theory). The same is true of Plaintiff's § 2 claim. *See Aaronson v. Kangarani*, No. 1:19-CV-00468-CL, 2019 WL 3490447, at *5 (D. Or. June 20, 2019), *report and recommendation adopted*, No. 1:19-CV-00468-CL, 2019 WL 3462540 (D. Or. July 31, 2019).

### ii. Miller Act

The Complaint also makes a single reference to the federal Miller Act. *See* Compl. at 26. This act "requires a general contractor on a federal construction project to furnish a payment bond." *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1205 (9th Cir. 2002). It also "creates a cause of action [allowing] '[e]very person who has furnished labor or material in the prosecution of the work'"—and who has not been paid in full by the general contractor—to recover on that bond. *Id.* (second alteration in original) (quoting 40 U.S.C. § 3133)).

Here, the Complaint makes no mention of a federal construction project, let alone a general contractor. Nor does the Complaint suggest that Plaintiff furnished labor or material of any kind. Accordingly, to the extent Plaintiff seeks to bring a Miller Act claim, said claim is frivolous and cannot confer federal question jurisdiction.

### iii. FDCPA

The closest the Complaint comes to asserting a non-frivolous federal claim involves Plaintiff's reference to the FDCPA. Plaintiff alleges that (1) Defendants "refused to supply

an accrual GAAP accounting in accord with 15 USC § 1692g" and (2) "[i]t appears that [Defendants] claim to do cash accounting . . . . [that] may . . . be a violation of 15 USC § 1692e (2A)."  Compl. ¶ 28.

"The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060–61 (9th Cir. 2011).  To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015)).  A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  This definition targets "third party collection agents working for a debt owner—not . . . a debt owner seeking to collect debts for itself."  *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 1721 (2017).

Plaintiff has not satisfactorily alleged that Defendants qualify as debt collectors.  Plaintiff alleged no facts suggesting that Defendants collect debts owed *another*; instead, the Complaint suggests that the subject debt is owed *to Defendants*.  *See* Compl. ¶ 1.  Nor does the Complaint allege facts indicating that the principal purpose of either Defendant's business is to collect debts.  In fact, the Complaint describes no debt collection efforts by either Defendant.  And assuming Defendants collect debts owed to *them* as *part* of their business—which is not evident from the Complaint—said collections would not render Defendants debt collectors.  *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013).

More damningly, even if Defendants qualify as debt collectors, Plaintiff has not alleged a violation of sections 1692g or 1692e(2)(A).  Section 1692e(2)(A) of the FDCPA

prohibits "the false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "Whether conduct violates 1692e . . . requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007)). Here, the only representation that Plaintiff identifies is the "appear[ance]" that Defendants "do cash accounting." Compl. at 28. As this representation does not concern the character, amount, or status of Plaintiff's debt, but instead Defendants' own accounting practices, it could not mislead even the least sophisticated debtor regarding said debtor's *debt*. Thus, Plaintiff's theory of recovery under § 1692e(2)(A) is without substance.

Plaintiff's § 1692g claim is similarly unsupported. Section 1692g (1) sets forth initial notice requirements with which debt collectors must comply and (2) requires debt collectors, when a consumer disputes a debt in writing, to cease collection efforts until they mail verification of the debt to the consumer. 15 U.S.C. § 1692g; *see also Guerrero*, 499 F.3d at 934–940. Nowhere does § 1692g require a debt collector to provide an "accrual GAAP accounting," and the Complaint does not otherwise include allegations suggesting that 1692g has been violated. *See* 15 U.S.C. § 1692g; Compl. ¶ 28. As such, Plaintiff's purported § 1692g claim lacks merit.

Because of the glaring deficits in Plaintiff's FDCPA claim, the Court finds that said claim is frivolous and insubstantial such that it does not confer federal-question jurisdiction.[6]

---

[6] Even if Plaintiff's FDCPA claim conferred jurisdiction, Court would dismiss Plaintiff's FDCPA claim—and all Plaintiff's other federal claims—for failure to state a plausible claim for relief. And in circumstances where all "federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). This is because, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). So, the Court would dismiss Plaintiff's Complaint in its entirety regardless.

As the Court concludes that it may not exercise diversity, interpleader, admiralty, or federal-question jurisdiction over the Complaint, the Court **DISMISSES** the Complaint **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's IFP Application (ECF No. 6) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint (ECF No. 1) for lack of jurisdiction. Plaintiff's claims relating to his ability to access United States Treasury funds through either a Treasury Direct account or purported bond, including his Miller Act claim, are dismissed **WITHOUT LEAVE TO AMEND**; no amendment could cure the defect in said claims. *See Steinmeyer v. Lab'y Corp. of Am. Holdings*, No. 22-CV-01213-DMS-DDL, 2023 WL 3940547, at *8 n.9 (S.D. Cal. June 8, 2023). For the same reason, the Court dismisses Plaintiff's claims under federal criminal statutes **WITHOUT LEAVE TO AMEND**. The Court **GRANTS** Plaintiff **LEAVE TO AMEND** with respect to all other claims.

To that end, the Court **GRANTS** Plaintiff <u>forty-five (45) days</u> from the date of this Order to file an amended complaint curing the deficiencies identified above. Any amended filing must be complete in itself without reference to Plaintiff's original Complaint, and any claim not realleged in an amended filing will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not realleged in an amended pleading may be "considered waived").

***Should Plaintiff fail to file an amended complaint <u>within forty-five (45) days</u>, the Court will enter a final Order dismissing this civil action based on the absence of subject-matter jurisdiction and Plaintiff's failure to prosecute in compliance with a court order requiring amendment***. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a

/ / /

/ / /

plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: March 27, 2024

Hon. Janis L. Sammartino
United States District Judge